**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

BRAND VENTURES, INC.,

        Plaintiff,

v.

Case No: 6:17-cv-1983-Orl-40KRS

TAC5, LLC, NATIONAL ENTERPRISE GROUP, LLC, JOHNATHAN CURTIS and JOHN DOES 1–5,

        Defendants.
_____/

## ORDER

This cause comes before the Court on Plaintiff's Motion for Preliminary Injunction and Memorandum of Fact and Law in Support Thereof (Doc. 7), filed November 29, 2017. On December 27, 2017, Defendants responded in opposition (Doc. 34). On January 3, 2018, the Court held an evidentiary hearing on Plaintiff's motion (Doc. 37). Upon consideration, and with the benefit of oral argument, the Court grants in part Plaintiff's motion for preliminary injunction.

**I.    BACKGROUND**

Brand Ventures, Inc. ("Brand Ventures") is an "internet product incubation company that builds specialized solutions for lead generation, consumer content, and direct-to-consumer e-commerce products." (Doc. 1, ¶ 22). Brand Ventures offers numerous products for sale under different trademarks. With respect to the current litigation, Brand Ventures alleges it owns the marks 1TAC and 1TAC TACTICAL OUTFITTERS for use with tactical flashlights and other tactical gear ("1TAC marks"), and

the mark 1HYDRO for use with portable water purifiers. (Doc. 1, ¶¶ 23–24). Brand Ventures began using 1TAC marks in December 2015, and began using 1HYDRO in March 2016. (R. 39:19–22; 40:16–20).[1] On March 16, 2016, Brand Ventures registered its 1TAC trademark, however, at this time it does not appear that it has registered 1TAC TACTICAL OUTFITTERS or 1HYDRO. (Doc. 1-6). To promote its products, Brand Ventures created an original website and other internet-based content. Brand Ventures owns the following Copyright Registrations:

| Registration No. | Title of Works |
| --- | --- |
| TX 8-389-190 | Website Registration |
| VA 2-064-784 | Images Registration |
| TX 8-390-481 | Website Assets |
| TX 8-376-158 | Catalog |

(Doc. 1-7, ¶¶ 2–5) (collectively, "Works").

In December 2016, Jonathan Curtis ("Mr. Curtis") and his brother-in-law Chris Cotroneo ("Mr. Cotroneo") decided to start an online business and traveled to Thailand to attend an affiliate conference in order to scout product and learn the trade. (R. 82:18–83:12; 107:21–108:3). At this conference, the two decided to sell tactical flashlights. Mr. Curtis paid for the development of the website as well as prelander pages to help drive business. (R. 84:13–85:11). Mr. Curtis and Mr. Cotroneo allegedly contracted out the development of its website to a third-party only identified as CSC. (R. 95:16–21). Upon returning to the United States, Mr. Curtis and Mr. Cotroneo began selling goods in commerce under the mark TAC5. (R. 107:21–108:5). TAC5, LLC was formed on March

---

[1] Transcript of the hearing is cited to as "(R. __:__)."

17, 2017, and was initially wholly owned by National Enterprise Group, LLC. National Enterprise Group, LLC is owned by Mr. Curtis and his wife, Ms. Cindy Curtis. At some point, ownership of TAC5, LLC was transferred to Mr. Cotroneo.[2] (R. 100:25–101:3).

On June 19, 2017, Brand Ventures sent TAC5 a cease and desist letter alleging that TAC5 was violating Brand Ventures' copyright and trademark rights. (Doc. 7-1). On June 28, 2017, TAC5 responded to Brand Ventures' cease and desist. (Doc. 7-2). The issues were not resolved, and on November 20, 2017, Brand Ventures filed a four-count Verified Complaint against Defendants TAC5, LLC, National Enterprise Group, LLC, Jonathan Curtis, and John Does 1 through 5 (collectively, "TAC5"). Brand Ventures' claims are as follows:

   Count I: Copyright Infringement;

   Count II: Federal Trademark Infringement;

   Count III: Federal Unfair Competition; and

   Count IV: Unjust Enrichment.

(Doc. 1 ¶¶ 53–80). Nine days later, on November 29, 2017, Brand Ventures moved for preliminary injunctive relief.

## II. STANDARD OF REVIEW

The Court is authorized to enter a preliminary injunction by Rule 65, Federal Rules of Civil Procedure ("Rule(s)"). To prevail on its request for injunctive relief, Brand Ventures must demonstrate the following four elements:

---

[2] The date at which this transfer occurred is unclear, however, as of June 21, 2017—when U.S. Trademark Application Serial No. 87499575 was filed for the trademark TAC5 and its related design—the mark was still alleged to have been ultimately owned by National Enterprise Group, LLC.

3

> (1) a substantial likelihood of success on the merits of the underlying case,
>
> (2) the movant will suffer irreparable harm in the absence of an injunction,
>
> (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and
>
> (4) an injunction would not disserve the public interest.

*Johnson & Johnson Vision Care. Inc. v. 1-800 Contacts. Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002). A preliminary injunction is a drastic and extraordinary remedy which should not be granted unless the movant can clearly establish each of the four elements. *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014); *see generally,* Kevin J. Lynch, *The Lock-in Effect of Preliminary Injunctions*, 66 FLA. L. REV. 779 (2015) (noting the problem of the lock-in effect when accessing the merits of a case at an early stage, based on incomplete information). "The burden of persuasion on all of the four requirements is at all times upon the plaintiff." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). The failure to establish an element will warrant denial of the request for preliminary injunctive relief and obviate the need to consider the remaining prerequisites. *See Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001) (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994)); *see also Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1326, 1339 n.7 (S.D. Fla. 2001) ("Because Del Monte has not met the first requirement, it is not necessary to discuss the remaining elements required for a preliminary injunction.").

In considering a motion for preliminary injunctive relief, "a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the

injunctive proceeding.' " *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (citing *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)); *see also R. Miller Architecture, Inc. v. Edgington Enters., Inc.*, No. 6:06-CV-871 -ORL-19DAB, 2006 WL 2226297, at *4 (M.D. Fla. Aug. 3, 2006) ("In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction.").

### III. DISCUSSION

Brand Ventures seeks a preliminary injunction enjoining TAC5's copyright and trademark infringement. Brand Ventures alleges that it has met the four required elements for the Court to issue a preliminary injunction. TAC5 refutes these allegations. However, before reaching the merits of these arguments, two issues raised by TAC5 must be addressed. First, whether Brand Ventures' motion is timely, and, second, whether the copyright issues are moot.

Brand Ventures has been aware of TAC5's alleged infringement since as early as June 2017, nevertheless Brand Ventures did not file suit until November of 2017. (Doc. 7-1). TAC5 has cited a litany of cases to support its claim that Brand Ventures is not entitled to a preliminary injunction due to unnecessary delay. (Doc. 34, pp. 4–5). However, these cases are inapposite. For example, *Wreal,* the only controlling case cited, stands for the proposition that the Court may deny a party's motion for preliminary injunction when the party waited five months *after filing its complaint* to move for injunctive relief. *Wreal, LLC vs. Amazon.com, Inc.*, 840 F.3d 1244, 1248–49 (11th Cir. 2016). Here, Brand Ventures filed its motion only nine days after filing the complaint. (Doc. 7). Prior to filing suit, Brand Ventures conducted necessary pre-suit investigation and exchanged

correspondence with TAC5's representatives. Brand Ventures should not be punished for attempting to resolve issues outside the court system, and engaging in necessary pre-suit investigation—especially given TAC5's unwarranted threat of Rule 11 sanctions. (Doc. 7-2). Accordingly, the Court does not find that Brand Ventures unnecessarily delayed in filing its Motion for Preliminary Injunction.

The second issue is whether the copyright infringement issue is now moot. At the hearing before this Court, the parties represented that they were working together to resolve copyright infringement issues, however, Brand Ventures maintained that it was not fully resolved. (R. 20:25–22:23). TAC5 represented it was working diligently to remove any images, and that two weeks would be more than sufficient to resolve any remaining issues. (*Id.*). Both parties were directed to file notices within fourteen (14) days of the hearing apprising the Court whether all allegedly infringing images and text had been removed, thereby mooting the issue. (*Id.*). On January 17, 2018, both parties filed notices. (Doc. 40, 41). In light of the conflicting assertions contained in the notices, the Court finds that the issue is not moot with respect to Brand Ventures' Motion for Preliminary Injunction.

### a. Copyright

#### i. Likelihood of Success

The first step in evaluating the likelihood that Brand Ventures will succeed on the merits is to determine whether it has established the *prima facie* elements of a copyright infringement claim: (1) that Brand Ventures owns a valid copyright in the Works, and (2) that Tac5 copied original elements of the Works. *Feist,* 499 U.S. 340, 361

(1991); *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1214 (11th Cir.2000). Brand Ventures has carried its burden on both of these elements.[3]

In determining whether Brand Ventures established that TAC5 copied original elements of the Works, the Court conducts a two-step analysis. *See Cornerstone Home Builders, Inc.*, No. 8:04-CV-2585T24TGW, 2005 WL 1863387, at *2. (M.D. Fla. Aug. 5, 2007) "[I]f there is no evidence of copying . . . [t]hat is, if a plaintiff does not have direct proof of copying,[ ] the plaintiff may show copying by demonstrating that the defendant had access to the copyrighted work and that the works are substantially similar." *Id.*; *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1249 (11th Cir. 1999) ("Since it is virtually impossible to prove copying directly, this element is usually established circumstantially, by demonstrating that the person who composed the defendant's work had access to the copyrighted material and that there is substantial similarity between the two works.").

First, Brand Ventures alleges that TAC5 had access to the Works through Brand Venture's website, and TAC5 does not dispute that the Works were available on the internet. Second, "[t]o demonstrate substantial similarity, a plaintiff must establish that 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Cornerstone Home Builders, Inc.*, 2005 WL 1863387, at *2 (quoting *Herzog*, 193 F.3d at 1248). Attached to the Verified Complaint is a declaration signed by Brand Ventures' CEO, Mr. Rick Bennink. (Doc. 1-7). In his declaration, Mr. Bennink presents dozens, if not hundreds, of examples of the wholesale copying of Brand

---

[3] The first element, Brand Ventures' ownership of a valid copyright in the Works, does not appear to be disputed.

Ventures' website and marketing material by TAC5.[4] By way of example, Brand Ventures issued a Spring 2017 Shopping Guide for products marketed under the 1TAC marks. Shortly thereafter, TAC5 issued its own 2017 Shopping Guide, lifting the exact language—save for minor changes in product or company names—used by Brand Ventures throughout:



(Docs. 1-9, p. 1; 1-12, pp. 16).

This egregious copying is found throughout TAC5's website and marketing material. Brand Ventures has established a substantial likelihood of success on the merits

---

[4] Moreover, while careful not to acknowledge direct copying in the hearing before the Court, Mr. Curtis still admitted he was "livid" when he compared the 1TAC website with TAC5's website, and acknowledged on a telephone call with is brother-in-law that the TAC5 website needed to be "cleaned up." (R. 108:14–109:12)

of its claim of copyright infringement based on TAC5's direct use and reproduction of Brand Ventures' Works throughout its website, brochures, and other marketing material.

### ii. Irreparable Harm

As the moving party, Brand Ventures "must demonstrate the threat of irreparable harm by independent proof, or no injunction may issue." *Nivel Parts & Mfg. Co., LLC v. Textron, Inc.*, No. 3:17-CV-146-J-32JRK, 2017 WL 1552034, at *1 (M.D. Fla. May 1, 2017) (Corrigan, J.) (internal quotations and citations omitted). "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Id.* For the Court to grant a preliminary injunction, Brand Ventures "must show that irreparable harm is likely." *Id.* As explained by the court in *Applied Concepts Unleashed, Inc. v. Matthews*,

> Harm might be irreparable because the loss is difficult to replace, or difficult to measure, or because plaintiff should not be expected to suffer such a loss. Possibility of market confusion and difficulty of proving loss of sales due to infringement may qualify harm as irreparable in copyright infringement cases. Plaintiff's loss of ability to control its own reputation may also make harm irreparable. Finally, the court may consider plaintiff's delay in seeking relief.

No. 12-14035-CIV, 2012 WL 12831313, at *14 (S.D. Fla. Oct. 1, 2012) (internal citations omitted).

The harm to Brand Ventures is imminent because TAC5 is currently offering its products using branding and marketing developed by Brand Ventures. There is a great possibility of market confusion between Brand Ventures' goods and TAC5's goods if TAC5 is not enjoined from using Brand Ventures' copyrighted Works. Brand Ventures will not be able to control its reputation if TAC5 continues to be available in the marketplace. The only factor that may weigh against finding that Brand Ventures will suffer irreparable

harm without a preliminary injunction is Brand Ventures' delay in seeking relief. However, under the circumstances presented in the evidence and explained at the hearing and above, the Court finds that Brand Ventures acted as expeditiously as possible. The Court finds that Brand Ventures is likely to suffer irreparable harm if the preliminary injunction is not granted.

### iii. Balance of Harms

Brand Ventures must establish that the harm it will suffer outweighs the harm a preliminary injunction may cause TAC5. *See Applied Concepts Unleashed. Inc.*, 2012 WL 12831313, at *14. TAC5 does not present any argument as to why the balance of harms weighs in its favor with respect to a preliminary injunction enjoining it from using Brand Ventures' Works. Moreover, a "[p]reliminary injunction should not be denied because of the devastating effect on the defendant's business built on copyright infringement." *Id.* Accordingly, the Court finds that Brand Ventures has established that the harm it is suffering from TAC5's infringement outweighs any harm that a preliminary injunction may cause TAC5.

### iv. Public Interest

The Court must finally determine whether issuing a preliminary injunction will disserve the public interest. *See Brody*, 2008 WL 4613046, at *16. Protecting Brand Ventures' copyrighted material is not against the public interest. *See Applied Concepts Unleashed, Inc.*, 2012 WL 12831313, at *15 ("[P]rotecting Plaintiff's copyright is not against the public interest. Rather, it will serve that interest."); *Brody*, 2008 WL 4613046, at *16 ("A preliminary injunction would not disserve the public interest; a preliminary injunction would affirmatively serve the public interest by protecting business from

misappropriation of confidential information and resources."). TAC5 argues that public interest weighs in favor of having as many entities as possible competing, however, the injunction is not to stop TAC5 sales—the preliminary injunction is to stop TAC5's use of infringing material. The Court finds that a preliminary injunction would not disserve the public interest.

### b. Trademark[5]

#### i. Likelihood of Success

"Under § 32(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), liability for trademark infringement occurs when a person 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.'" *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (quoting 15 U.S.C. § 1114(1)(a)). Thus, to prevail on a claim of trademark infringement, plaintiffs "must establish: (1) that they possess a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred 'in commerce,' (4) that the defendants used the mark 'in connection with the sale . . . or advertising of any goods,' and (5) that the defendants used the mark in a manner likely to confuse consumers." *North Am. Med. Corp. v. Axiom Worldwide,*

---

[5] In addition to alleged trademark infringement discussed herein, Brand Ventures has also moved for an injunction barring trade dress infringement. (Doc. 34, p. 11). Brand Ventures did not sufficiently identify in its motion exactly what constitutes the trade dress infringed by TAC5. For example, Brand Ventures stated that TAC5 used "identical packaging," but does not identify the specific elements constituting the trade dress of the packing, such as color, shape, material, or other aspects. (*Id.*) Therefore, without addressing the substantive merits of Brand Ventures' ultimate trade dress claim, the Court finds that Brand Ventures' motion fails with respect to enjoining trade dress infringement.

*Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008). It does not appear that TAC5 disputes the second, third, or fourth factors here.

TAC5 asserts that Brand Ventures' 1TAC marks and 1HYDRO mark do not function as valid trademarks, and that 1TAC should not have been registered. (Doc. 34, p. 7). Specifically, TAC5 argues that Brand Ventures' marks are "descriptive at best" and "widely used by third parties. (Doc 34, p. 10); s*ee Vision Ctr. v. Opticks, Inc.,* 596 F.2d 111, 115–16 (5th Cir.1979) (describing the definitions of and the degree of protection for generic, descriptive, suggestive, and arbitrary or fanciful terms), *cert. denied,* 444 U.S. 1016 (1980). "A descriptive term identifies a characteristic or quality of an article or service and, though ordinarily not protectable, may become a valid trade name if it acquires a secondary meaning." *Id.* at 115. "In order to establish secondary meaning, the plaintiff 'must show that the primary significance of the term in the minds of the consuming public is not the product but the producer.'" *Id.*at 118 (quoting *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938)).

The marks at issue, 1TAC and 1HYDRO, both contain terms preceded by the number one. At the hearing before this Court, Brand Ventures' CEO, Mr. Rick Bennink, testified that "tac" is short "tactical." (R. 74:2–3). The Court also notes that the prefix "hydro-" is often used in the formation of compound words and means water, e.g., hydroplane. *Hydro- Definition*, Dictionary.com, http://www.dictionary.com/browse/hydro- (last visited Jan. 20, 2018). When asked what products are marketed under the 1TAC marks, Mr. Bennink testified "tactical flashlights, accessories, batteries, head lamps, safety, tactical pins, bracelets, survival tactical flashlight and gear." (R. 40:25–41:2). When asked the same question for products under the 1HYDRO mark, Mr. Bennink

testified "water filtration bottle series." (R. 41:4–6). Mr. Bennick also testified that Brand Ventures has only been using the 1TAC mark since December of 2015 and began using the 1HYDRO mark a few months thereafter, (R. 39:19–22, 40:16–22), and that he was aware of other third parties using the term "tac" in connection with flash lights and tactical equipment. (R. 75:16–19). In addition to Mr. Bennick's testimony, TAC5 presented numerous instances of third-parties using the word "tac" as part of a trademark for various forms tactical gear or using the word "hyrdro" as part of trademarks for water bottles. (Doc. 34, pp. 7–12). The evidence demonstrates that the terms "tac" and "hydro" both describe a characteristic or quality of the gear sold under each respective mark, and therefore at this stage the Court finds the marks merely descriptive.

Once TAC5 overcame the presumption of the trademarks' validity, the burden shifted back to Brand Ventures to show a likelihood of success on the merits of proving that the trademark is either suggestive or descriptive with a secondary meaning. Brand Ventures presented some testimony regarding advertising costs, however, given the short time that Brand Ventures had used the trademarks at issue, the Court finds the evidence regarding secondary meaning unpersuasive at this time. TAC5 has put forth evidence lending credibility to its argument that the 1TAC and 1HYDRO marks are weak and may not be protectable. Accordingly, the Court determines that Brand Ventures is not *substantially* likely to succeed on the merits of its trademark infringement claim. The Court need not address likelihood of confusion.

### c. Bond

Federal Rules of Civil Procedure 65(c) provides that a preliminary injunction should not issue "without the giving of security by the applicant sufficient for payment of costs

and damages as may be incurred or suffered by any party to have been wrongfully enjoined." *N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d. 1217, 1232 (M.D. Fla. 2002). "The amount of an injunction bond is [a matter ultimately] within the sound discretion of the district court." *7–Eleven, Inc.*, 977 F. Supp. 2d at 1230 (quoting *Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1127 (11th Cir. 1997)). Furthermore, "[t]he burden of establishing a rational basis for the amount of a proposed bond rests with the party seeking security," *Medi–Weightloss Franchising USA, LLC*, 2010 WL 1837767, at *8 (M.D. Fla. March 11, 2010) (recommending a $10,000 bond*)*, and "the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (quotation omitted). Brand Ventures contends that no security is required because it has made a high showing of succeeding on the merits of its claims. TAC5, on the other hand, asserts that Brand Venture should post a bond in at least the amount of two million dollars. At the hearing before the Court, TAC5 represented the ease with which the infringing images could be removed. Accordingly, the Court waives the imposition of a bond.

## IV. CONCLUSION

For the aforementioned reasons it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Preliminary Injunctive Relief and Brief in support (Doc. 7) is **GRANTED IN PART.**
2. Defendants TAC5, LLC, National Enterprise Group, LLC, and Johnathan Curtis are hereby enjoined from:
   a. Using any original work which is the subject of Brand Ventures' Copyright Registration Nos. TX 8-389-190, VA 2-064-784, TX 8-390-481, and TX 8-376-158 and any derivative works based thereon; and

14

      b. Participating in or assisting in the commission of any act that would be a violation of this Order if performed or carried out by an enjoined person or entity.

3. In all other respects, Plaintiff's Motion for Preliminary Injunctive Relief and Brief in support (Doc. 7) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on February 2, 2018.

*[signature]*
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

15